IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge John L. Kane

Civil Action No. **07-cv-1906-JLK**

**JON J. MAXEY,**

     Plaintiff,

v.

**RESTAURANT CONCEPTS II, LLC, a Georgia limited liability company,**

     Defendant.

---

## MEMORANDUM OPINION AND ORDER

---

Kane, J.

     Plaintiff, after being terminated from his position as general manager of a local

chain restaurant, filed suit in state court asserting a state law public policy tort claim as

well as federal age discrimination and retaliation claims. Defendant removed the case to

federal court where the matter is before me on Defendant's Motion for Summary

Judgment. I grant the Motion as to Plaintiff's federal claims and decline to exercise

supplemental jurisdiction over the state law claim. The federal and state law causes of

action are ultimately premised on different sets of operative facts and the state claim,

cognizable only upon an extension of current Colorado law, raises simultaneously novel

and local issues best addressed by the Colorado courts in the first instance.

     Because the record before me fails to raise a colorable inference that Plaintiff

suffered discrimination or retaliation on the basis of his age, summary judgment on those

claims is appropriate.  The remaining state law claim is remanded to the Denver District Court.

## FACTS

Plaintiff  Jon J. Maxey, a white male in his early 50s, served as general manager of two different Denver area Applebee's restaurants before he was terminated in September 2005 by Applebee's parent company, Restaurant Concepts, Inc. (RCI).  He was 52 at the time of his termination.

About ten months before his termination, Maxey was transferred from the Glendale (central Denver) Applebee's store to Tamarac (South Denver), a move Maxey claims was punitive and the result of pressure by members of the Glendale City Council for his ouster. Specifically, Maxey claims that when he complained to management that City Council members were seeking "to blackmail" him into providing them free meals and other benefits by threatening to take away his liquor license, management succumbed to the pressure rather than support him.  Maxey Affid. (Doc. 52-2) at ¶¶ 8-9.  Maxey contends RCI gave him three options: (1) demotion to a lower level position at the Glendale store; (2) a lateral (general manager) transfer to the Tamarac store; or (3) termination.  *Id.* ¶ 10.  Maxey chose the transfer, but viewed it as a demotion because Tamarac was a "low-volume store in an area of Denver with older clientele."  *Id.* ¶ 11.  Maxey contends Tamarac had a reputation as being a "'dumping ground' for managers that Restaurant Concepts wanted to get rid of."  *Id.*

According to Maxey, as soon as he arrived at Tamarac in early 2005 it "became apparent that [Defendant] wanted to terminate [his] employment."  Maxey Affid. ¶ 12.  Examples cited included supervisor Ron Ward's "refus[al] to assist" Maxey when he tried to remedy health and

safety deficiencies at the Tamarac store, *see id.*, and Ward's "refus[al] to transfer" an assistant

manager named Dave Olson after the two had an altercation.  *Id.*  While the altercation was

verbal, Maxey states Olson had a "reputation for violence" and Maxey felt "in danger of

being assaulted" during their exchange. *Id.*  Maxey claims management "also attempted

to get" another older employee to quit the Tamarac store, "as they forced him to return to

work immediately after he had been 'pistol whipped' during a robbery." *Id.* ¶ 13.

In the wake of the Olson incident, Maxey wrote a letter to John Rhodes, Restaurant

Concepts' Vice President for Human Resources at corporate headquarters in Atlanta.  *See*

9/9/2005 Letter (Doc. 37-15).   Maxey contends he wrote the letter "to complain about . . .

discrimination against older workers." Affid. ¶ 14.  The only substantive complaint in the

letter, however, is Ward's handling of the Olson incident.  The entire body of the letter is

set forth below:

> This is to inform you of my intent to file a claim against Restaurant
> Concepts II, L.L.C., with the Equal Employment Opportunity Commission for
> age discrimination.
>
> I am also at this time requesting the immediate removal of Dave Olson
> Assistant General Manager from the Tamarac location.  On July 5, 2005 Friday I
> held a [sic] in store management meeting with Dave Olson and Ed Simpson.
> Dave has a history of anger management problems and is 6'3 200+ pounds.  I was
> holding Mr. Olson accountable for some of his specific assigned job functions:
> file maintenance etc.  He proceeded to curse at me.  I called the meeting over
> immediately and asked him to leave for the evening.  He refused and told me to
> leave.  In order to diffuse the situation I went to the parking lot to call Ron Ward
> and appraise [sic] him of the situation.  Mr. Ward did not return my calls for the
> next 4 days or perform a [sic] investigation with the staff.  On Saturday July 6,
> 2005 I spoke with David Haase and he instructed me to not allow Mr. Olson to
> enter the building.  Mr. Haase understood that I felt threatened and unsafe in my
> work environment.  Mr. Ward refused to speak with me but he did spend over 1
> hour with Mr. Olson.  He sent him to a seminar in Atlanta and he returned to the
> Tamarac unit as my assistant despite my concerns.  If this type of intimidating

situation where [sic] to happen again I will notify the local police, press charges against Mr. Olson and hold your company liable for any damages physical or other wise that may occur.  For the record I also left a message for you.  There was no reply.

I have retained Mr. Elwyn F. Schaefer as my attorney of record.  He will review any and all documents presented by the EEOC or your company.  If we are to enter in mediation he will be asked to appear on my behalf.

Letter (Doc. 37-15).

Within days of having sent this letter, Maxey claims management began a "concerted effort" to write him up for various infractions and began auditing his Steak Night procedures.  Affid. ¶¶ 16-21.  Called to a meeting with David Haase and Ron Ward on September 23, 2005, he received two "Notices of Progressive Discipline," one addressing his perceived failure to comply with Steak Night procedures and the other related to a complaint the company received from Robinson Dairy regarding Maxey's handling of a milk delivery issue.  *See id.* ¶¶ 22-23; Maxey Dep. at 210-11, 216-17, 220-22.  The meeting is characterized by Defendant as a "counseling" session at which the Robinson Dairy and other vendor complaints were addressed.  Maxey denies any "counseling" took place, and contends the meeting was in direct response to the Rhodes letter.  Maxey Dep. 201-05.  While Maxey acknowledges having been written up on at least two other occasions during his tenure at Applebee's (Dep. p. 225), he maintains the September 23, 2005 write-ups were retaliatory and refused to sign them.  *Id.*

On September 27, 2005, Maxey was called to follow-up meeting where his employment was terminated.  According to RCI, management had received yet another vendor complaint regarding Maxey, this time from Crespin Cleaners, mere days after the

4

September 23 meeting.  Upon learning of this complaint, Greg MacIsaac, Vice President

of Operations and the manager who had personally fielded the Robinson Dairy complaint,

decided Maxey had to go.  Maxey does not deny a "conversation" with a Crespin

Cleaners employee, but attempts to cast doubt on the company's professed concern

because "Crespin Cleaning never complained to me, nor did its employee ever express

feeling uncomfortable about any conversations that I had."  Affid. ¶ 19.

It is undisputed that during the time leading up to Maxey's transfer, the Tamarac

store had two managers, one who was 34 and the other, the manager Maxey replaced,

who was 40.  After Maxey's termination, a woman named Amy in her "mid to late 30s"

replaced him as the Tamarac general manager.  Maxey Dep. (Doc. 37-2) at 250:17.

Maxey filed his original discrimination charge with the EEOC on October 7, 2005,

identifying his transfer to Tamarac, his disciplinary notices for "insubordination" and for

the Robinson Dairy incident, as well as the Olson incident as the "particulars" supporting

that charge.  10/7/05 EEOC Charge (Doc. 37-17).  Maxey filed an Amended Charge on

February 27, 2006, repeating those particulars[1] and adding that he had been informed on

September 24, 2005 that he "had to work evenings until closure" and was "the only General

Manager required to work either Friday or Saturday."  Am. EEOC Charge (Doc. 60-6).  In his

Amended Charge, Maxey also adds that he was terminated "for failing to fill out a prep list the

---

[1]       In his October 2005 Charge, Maxey dated the "insubordination" and Robinson Dairy
disciplinary notices January and February 2005, respectively.  In the Amended Charge, Maxey
corrected the date for the Robinson Dairy write-up to September 2005 and added an allegation
regarding "two disciplinary actions" being received on September 24, 2005.  *See* Am. EEOC Charge
(Doc. 60-6).  It is clear from Maxey's deposition that these all referred to the two disciplinary
notices he received at the September 23 meeting.

previous evening." *Id.* None of the particulars links any of these actions to age or age discrimination.

During the course of discovery, Maxey admitted having "no idea," "didn't think about," and "didn't really give . . . a lot of thought" to the ages of his co-workers either at the Glendale or Tamarac stores, conceded there was no factual basis for the assertion Tamarac was a "dumping ground" for older managers, and ultimately abandoned his claim that his transfer was age-related. Maxey Dep. at 74-75, 93-94; Resp. (Doc. 52) at 25 (Maxey's "consistent opposition to Glendale City Council's attempts to solicit favors" is what precipitated the transfer, and Maxey "is not asserting an ADEA claim based on the transfer, but instead based on conduct after the transfer leading to his termination"). Accordingly, Maxey's age discrimination and retaliation claims are confined to the time period after his transfer.

## LEGAL STANDARD.

Summary judgment is appropriate only if there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Adamson v. Multicommunity Diversified Servs., Inc.*, 514 F.3d 1136, 1145 (10th Cir. 2008). A fact is material if is could affect the outcome of the suit under governing law; a dispute of fact is genuine if a rational jury could find for the nonmoving party on the evidence presented. *Id.*

On a motion for summary judgment, the moving party bears the burden of demonstrating no genuine issue of material fact exists. *Adamson* at 1145. Where, as

here, the moving party does not bear the ultimate burden of persuasion at trial, it may

satisfy this burden by demonstrating a lack of evidence for an essential element of the

nonmovant's claim. *Id.* In deciding whether the moving party has carried its burden, I do

not weigh the evidence and instead must view it and draw all reasonable inferences from

it in the light most favorable to the nonmoving party. *Id.* However, neither unsupported

conclusory allegations nor mere scintillae of evidence are sufficient to create a genuine

dispute of material fact on summary judgment. *See Mackenzie v. City and County of

Denver*, 414 F.3d 1266, 1273 (10th Cir. 2005). When a moving party has carried its burden

under Rule 56(c), more than "some metaphysical doubt" as to the material facts must be

demonstrated by the nonmovant to survive summary judgment. *Matsushita Elec. Indus. Co. v.

Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

## DISCUSSION.

### I.  Maxey's federal claims.

The Age Discrimination in Employment Act (ADEA) provides a remedy for

discrimination in private employment on the basis of age. *See* 29 U.S.C. § 623(a)(1); *McKnight

v. Kimberly Clark Corp.*, 149 F.3d 1125, 1128 (10th Cir. 1998). The protective provisions of §

623(a)(1) are limited to individuals who are 40 or older, *id.*, and were prompted by Congress'

"concern that older workers were being deprived of employment on the basis of inaccurate and

stigmatizing stereotypes." *Greene v. Safeway Stores, Inc.*, 98 F.3d 554, 557 (10th Cir. 1996)

(quoting *Hazen Paper Co. v. Biggins*, 507 U.S. 604, 610 (1993)). The Act requires employers

"to evaluate [older] employees . . . on their merits and not their age." *Id.* It does not, however,

require employers to evaluate employees perfectly, fairly, or even rationally – employers are free

to exercise their sound business judgment in personnel matters and may discipline and terminate at will employees for any reason, so long as it is not unlawful.  *See Adamson*, 514 F.3d at 1153.

The Act  also provides a remedy to any employee who, in good faith, speaks out against or otherwise opposes perceived age discrimination.  *See* 29 U.S.C. § 623(d).  In this case, Maxey asserts claims for both disparate treatment on the basis of age under § 623(a)(1) and for retaliation under § 623(d).

### *Disparate Treatment.*

To prevail on his wrongful discharge/disparate treatment claim under the ADEA, Maxey must prove by a preponderance of the evidence that his age was the "but-for" cause of RCI's actions.  *See Gross v. FBL Financial Servs., Inc.*, __ U.S. __, __, 129 S. Ct. 2343, 2351 (2009); *accord Greene* (age must be a "determining factor" in the employer's challenged decision before liability will attach under the ADEA).  Because Maxey has no direct evidence of discrimination, the *McDonnell Douglas* burden-shifting framework governs consideration of the evidence presented on summary judgment.  *Greene*, 98 F.3d at 557-58 (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973)).

Under the *McDonnell Douglas* framework, Maxey bears the burden initially of establishing a prima facie case of discrimination.  *O'Connor v. Consolidated Coin Caterers Corp.*, 517 U.S. 308, 311-12 (1996)(quoting *St. Mary's* at 506 and *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 254 (1981)).  Success would entitle Maxey to a presumption that his termination, and RCI's actions leading up to it, were, in fact, based on his age.  The burden of production would then shift under *McDonnell Douglas* to RCI to rebut the presumption inherent in the prima facie case by articulating a facially legitimate,

nondiscriminatory reason for its actions.  *Id.*  Once RCI did so, the presumption would "simply drop[] out of the picture" and Maxey would resume his full initial burden of proving age discrimination was the "but for" cause of RCI's actions.  *See id.* (quoting *St. Mary's* at 506).  Under *McDonnell Douglas*, a plaintiff may meet this ultimate burden either by demonstrating that the employer's proffered reasons are pretexts for unlawful discrimination or with any other evidence giving rise to the necessary inference.  *See id.* (citing *Burdine*).

Because Maxey has failed to establish a prima facie case of age discrimination, he is not entitled to a presumption that RCI acted with discriminatory intent.  Under these circumstances, RCI is not required to defend its actions and Maxey must carry his "but for" burden, if at all, with evidence beyond that which simply raises questions regarding the sincerity of any reasons RCI gave him for its actions.  *See Adamson*, 514 F.3d at 1153 (failure to establish prima facie case of sex discrimination entitled defendant to summary judgment under *McDonnell Douglas* framework without reference to defendant's stated reasons for their terminations).  On the record before me, Maxey has failed to do so.

### Prima Facie case.

The establishment of a prima facie case "'in effect creates a presumption that the employer unlawfully discriminated against the employee.'"  *O'Connor*  at 506 (quoting *St. Mary's* at 506).   While the burden of establishing a prima facie case is not high, it is real, and must be sufficient to warrant the presumption of liability in plaintiff's favor.  *See id.; accord Adamson*, 514 F.3d at 1146.

In the context of summary judgment, the *McDonnell Douglas* framework requires a plaintiff to raise a genuine issue of material fact on each element of the prima facie case.

*Garrison v. Gambro, Inc.*, 428 F.3d 933, 937 (10th Cir. 2005).  Maxey purports to establish his prima facie case of age discrimination solely on the fact of his status as an over 40 individual and his replacement, upon termination, by a woman in her 30s.  Response Br. (Doc. 52) at 32-33. The assertion is facile given the arc of Maxey's claims and the narrative spun to support them, namely, that he was transferred to Tamarac after alienating the Glendale City Council because it was a "dumping ground" for *older* employees, and when he expressed displeasure about this, management undertook a concerted effort to get rid of him.

Other than the assertion that Tamarac was where older managers were sent on their way out of the company, there are no *facts*[2] in the record to support the inference secured through the establishment of a prima facie case under *McDonnell Douglas*.  Maxey was already 48 when he was originally hired by RCI, 49 when he was promoted to general manager, and 52 when he was

---

[2]     There is the conclusory formulaic assertion, repeated in Maxey's letter to Rhodes, his EEOC Charges, his Complaint, and his affidavit that RCI discriminated against him "because of his age," but this assertion, without more, is insufficient to state a claim under Rule 8 of the Federal Rules of Civil Procedure, let alone to survive summary judgment.  *See Ashcroft v. Iqbal* , __ U.S. __, 129 S.Ct. 1937 (2009).  In *Iqbal*, the Supreme Court clarified that the Rule 8 pleading standard explicated in *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007), applies beyond antitrust cases to all civil actions filed in federal court.  That standard "does not require 'detailed factual allegations' but demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Iqbal* at 1949-50.  "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.*  "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly* at 557).

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.

*Id.* (internal citations omitted).  Applying this analysis to a motion for summary judgment, if the record contains only naked assertions without factual content or enhancements allowing a reasonable trier of fact to infer that the defendant is liable for the misconduct alleged, judgment should enter for the defendant.

fired.  The person who made the decision to terminate Maxey, moreover, was the same person,

Greg MacIsaac, who promoted him at the age of 49.[3]  Maxey admits he paid no attention, did not

know, and never thought about the relative ages of anyone with whom he worked.  While he was

replaced by a younger manager when he left Tamarac, he himself replaced a younger manager

when he arrived.  These undisputed facts fly in the face of the only nonconclusory allegation he

makes to support his claim of age discrimination, namely, that Tamarac was a "dumping ground"

for aging managers, and otherwise supports no genuine inference that he was terminated

"because of" his age.

     The Supreme Court, moreover, has explicitly rejected replacement by a person under 40

as a mandatory element of a prima facie case in all ADEA termination cases.  *See O'Connor*,

*supra.*  Given its purpose in establishing a "legally mandatory . . . presumption" of  invidious

discrimination, the Court emphasized the need for a "logical connection" between the elements

of a prima facie case and the discrimination alleged.  *Id.* at 311-12.

> The discrimination prohibited by the ADEA is discrimination 'because of [an]
> individual's age,' though the prohibition is 'limited to individuals who are at least
> 40years of age.'  This language does not ban discrimination against employees
> because they are aged 40 or older; it bans discrimination against employees
> because of their age. . . . [T]here can be no greater inference of *age* discrimination

---

[3]    As RCI argues in its briefing on summary judgment, the fact MacIsaac both promoted and later fired Maxey entitles RCI to a presumption that the termination decision was *not* motivated by discriminatory intent under *Antonio v. Sygma Network, Inc.*, 458 F.3d 1177, 1183 (10th Cir. 2006).  The Tenth Circuit in *Antonio* held that where an employee was both hired, and fired, by the same person, the employer is entitled to an inference that its decision was not the result of invidious discrimination.  *Id.*  Logically, this "same-actor" inference should apply where the same person who promotes an employee later fires that employee.  *See Bardales v. Western Stone & Metal*, 2007 WL 1087096 at *6, n. 8 (D. Colo. April 10, 2007)(applying same actor inference where same person recommended employee's promotion and later fired the employee).  Maxey ignores the "same-actor" inference argument raised by RCI, and even though it is not necessary to my ruling, RCI  is entitled to take advantage of the presumption, which is unrebutted on this record.

(as opposed to '40 or over' discrimination) when a 40-year old is replaced by a 39-year-old than when a 56-year-old is replaced by a 40-year old.  Because it lacks probative value, the fact that an ADEA plaintiff was replaced by someone outside the protected class is not a proper element of the *McDonnell Douglas* prima facie case.

* * *

In our view . .  the proper solution to the problem lies not in making an utterly irrelevant factor an element of the prima facie case, but rather in recognizing that the prima facie case requires 'evidence adequate to create an inference that an employment decision was based on a[n] [illegal] discriminatory criterion . ...'

*Id.* at 312 (citations omitted, emphasis original).

Accordingly, Maxey is not automatically entitled to the presumption that RCI acted with discriminatory animus because he was replaced, upon his termination, by a younger individual. Instead, he must come forward with admissible evidence, under a summary judgment standard, "adequate to create an inference that [the] employment decision [at issue] was *based on [his age]*." *O'Connor*, 312 (emphasis mine).  Because the record is devoid of such evidence, and the undisputed facts contravene such an inference, Maxey has failed to establish his prima facie case and RCI is not required, under *McDonnell Douglas*, to defend its actions.  *Accord Adamson*, 514 F.3d at 1146.

*No inference of age discrimination independent of McDonnell Douglas.*

While I may stop the analysis under the *McDonnell Douglas* framework without proceeding to consider Maxey's other evidence or his claims of pretext, I will consider both and determine whether Maxey's evidence is sufficient to raise an inference of "but for" causation independently of *McDonnell Douglas.  See Adamson*.

Other than the *Iqbal*-precluded conclusory assertion that RCI did, in fact, discriminate against him because of his age – Maxey nowhere in his deposition, discovery responses or anywhere else offers any testimony or documentary evidence linking either of the disciplinary

12

notices he received on September 23, 2005 – for Steak Night infractions or the Robinson Dairy altercation – to his age. As for his testimony regarding Ward's "refusal[s]" to transfer Dave Olson out of the Tamarac store and to "support" Maxey making physical and personnel changes, nor his "forcing" an over-50 assistant manager "to return to work after being pistol whipped during a robbery," none of these actions has anything to do with Maxey's (or anyone else's) age.

Maxey in his affidavit also challenges the legitimacy of RCI's use of vendor complaints as grounds for disciplining him with countervailing "facts" – i.e. that he confronted the Robinson Dairy driver "so that [he] would not serve spoiled milk" and, while acknowledging a "conversation" with a Crespin employee, that no one at Crespin "had complained to [him]" about it – that not only fail to disprove or cast doubt on RCI's proffered reasons for its actions, but also raise no inference that "but for" Maxey's age, he would not have been disciplines or terminated.

The only third-person testimony offered in support of his claim, the affidavit of former RCI employee Michael Sanders, Resp. Ex. 2 (Doc. 52-3), fails also to raise any genuine inference that RCI disciplined or terminated Maxey on the basis of age. An assistant manager of Maxey's at the Glendale store, much of Sanders' affidavit is devoted to Maxey's transfer-related claims, which are no longer premised on age discrimination. Sanders' testimony that he was asked to a meeting "in 2005" where Ward, Haase and MacIsaac offered to make him a general manager if he "could offer anything negative against Jon Maxey that would 'cause him to be terminated or demoted,'" even if credible,[4] neither refutes RCI's proffered reasons for terminating Maxey nor ties RCI's actions in any way to Maxey's age. Without a *presumption* of

---

[4]     Ward testified, and Sanders does not dispute, that at the time of this averred meeting Sanders had actually already resigned from the company and was attempting to regain employment, but was not eligible for rehire. Ward Depo. at 146-47.

invidious intent working in his favor, Maxey secures no inference of invidious intent simply by casting aspersions on RCI's stated motivations. *See Adamson.*

The remainder of Mr. Sanders' affidavit tracks Maxey's in questioning RCI's motives in ways that would not give rise to an inference of pretext even if Maxey could benefit from the presumption of invidious intent. For example, Sanders denies he ever heard Maxey make "comments that could be taken as racist" (this apparently was the substance of at least one of the vendor complaints), Affid. ¶ 12; states Maxey "was following the stated procedure" when he enforced "Steak Night" rules, *id.* ¶ 12; and opines that, "in [his] experience," the company had "never used [vendor complaints] as a reason for terminating a store manager." *Id.* at 14. Again, these opinions do not refute RCI's stated reasons for its actions and, even if viewed as casting doubt on them, support no inference, in the absence of the prima facie presumption, that they were pretexts for *unlawful* discrimination.

In the absence of any facts adequate to raise an inference of age discrimination under *Gross*, RCI is entitled to summary judgment on Maxey's claim for disparate treatment under the ADEA independently of *McDonnell Douglas*.

*Age Discrimination - Retaliation.*

Turning to his ADEA retaliation claim, Mr. Maxey alleges RCI "papered" his file with illegitimate disciplinary actions and terminated him in response to his September 9, 2005 letter to Rhodes in violation of the ADEA's prohibition on discriminating against an employee who "has opposed any practice made unlawful" by the statute. 29 U.S.C. § 623(d). Because Maxey admits he lacks direct evidence of retaliation, the *McDonnell-Douglas* burden-shifting scheme again applies. *See Hinds v. Sprint/United Management Co.*, 523 F.3d 1187, 1201 (10th Cir.

2008).  Again, the inquiry begins and ends with the first step of the *McDonnell-Douglas*
framework, because the discovery materials and affidavits on file show there is no genuine issue
of material fact with regard to the existence of a prima facie case.

A prima facie case of retaliation under the ADEA requires a plaintiff to show (1) he
engaged in protected opposition to discrimination, (2) a reasonable employee would have
considered the challenged employment action materially adverse, and (3) a causal connection
existed between the protected activity and the materially adverse action.  *Hinds*, 523 F.3d at
1202.  To satisfy the first element of the prima facie case, the employee must do more than
conclusorily incant that he is protesting age discrimination.  Rather, he must demonstrate a
reasonable and good faith belief that, at the time he engaged in the opposition, the protested
violated the law.  *See Hertz v. Luzenac America, Inc.*, 370 F.3d 1014, 1015-16 (10th Cir. 2004),
*see Clark County School Dist. v. Breeden*, 532 U.S. 268, 269 (2001)(dismissing retaliation claim
when '[n]o reasonable person could have believed that the . . . incident [complained of]
. . . violated [ADEA]'s standard).  The substance of the Rhodes letter, together with a lack of
facts (beyond the facially insufficient conclusory assertion) to demonstrate Maxey wrote it in a
good faith and reasonable belief that RCI had actually engaged in age discrimination, doom his
claim at the prima facie stage of the analysis.

Maxey's only evidence in support of the first element of his prima facie case is the
September 9, 2005 letter he wrote to Rhodes in Atlanta.  *See* Resp. (Doc. 52) at 34-36.  Maxey
claims the September 23 disciplinary notices and his September 29 termination were the direct
result of his having written that letter.  What Maxey fails to acknowledge is that, in the absence
of evidence that he was engaging in *protected* activity (rather than expressing anger about a non-

15

age related incident), the inference raised by the causal connection may be of retaliation, but not ADEA-prohibited retaliation.

As previously set forth, the Rhodes letter contains no mention of any conduct or circumstances related to age discrimination other than the opening line informing Rhodes of Maxey's intent to file a claim for age discrimination.  The substance of the letter is devoted entirely to the Olson incident and Maxey's outrage at Ward's failure to transfer Olson after Maxey felt he had been physically assaulted by him.  Nothing about that incident relates in any way to age discrimination:  Maxey does not allege Olson threatened him because of his age or that Ward's actions refusing to transfer Olson were somehow related to Maxey's age (even if such an allegation could logically be made).  The only conduct up to that time that Maxey had ever ascribed to age discrimination was the transfer to Tamarac that had occurred more than nine months before.  Maxey not only fails to mention the transfer in his letter to Rhodes, but has since abandoned any age-based claim premised on the transfer based on admissions that age discrimination was never a bona fide reason for his transfer-related complaints.  The Rhodes letter simply does not, on the record before me, establish Maxey was engaging in protected activity under the ADEA when he wrote it.  *See Hinds*, 523 F.3d at 1203.

Further, the fact younger managers both preceded and followed Maxey at Tamarac and Maxey's admission that he was unaware of and paid no attention to the ages of his co-workers at Glendale or Tamarac, belie any assertion that he was engaging in a good faith effort to protest age discrimination when he wrote the Rhodes letter.  Maxey cannot credibly claim on one hand that he believed RCI was discriminating against him or anyone else on the basis of age when, on the other, he had no idea how old RCI's other employees were.  *See Hertz*, 370 F.3d at 1015-16

16

(plaintiff's challenge must be to conduct he in good faith and reasonably believed constituted age discrimination).

Finally, none of the complaints Maxey registered with management beyond the Rhodes letter has any logical connection to age discrimination. Maxey's complaints regarding Ward's "refusal" to support repairs or other changes at Tamarac (none of which had anything to do with correcting or addressing perceived age discrimination) or Ward's "forcing" an assistant manager to return to work after he had been "pistol whipped" support an inference that in making these complaints Maxey was engaged in protected activity under the ADEA, and none would support the first element of a prima facie case of retaliation even if Maxey relied on them to do so.

In short, Maxey never makes a connection between his complaints in the Rhodes letter and protected activity under the ADEA, and the evidence fails to support one. Even if he could, Maxey's failure genuinely to rebut RCI's proffered legitimate reasons for its actions would be independently fatal to his retaliation claim.

## II. Maxey's state law claim.

Maxey's failure, on this record, to raise a genuine issue of material fact with respect to either of his federal claims eliminates the grounds on which federal jurisdiction in this nondiversity case was based. *See* 28 U.S.C. § 1331. Supplemental jurisdiction over Maxey's state law claim – that his transfer to Tamarac for rebuffing efforts by Glendale City Council members' to blackmail him for favors violated Colorado public policy – was premised on the relatedness of that claim to Maxey's federal claims as originally pled, namely, that the transfer from Glendale to Tamarac was the result not only of the corruption of local governmental officials, but also of age discrimination. *See* 28 U.S.C. § 1367(a)(district courts have

17

supplemental jurisdiction over all claims that are so related to claims in the action that they form

part of the same case or controversy).   With the abandonment of Maxey's claim that his transfer

was based on age, the existence of supplemental jurisdiction is less compelling.  Given the

seriousness of Maxey's state law claim and its uniqueness under existing Colorado law, I believe

it prudent to decline to exercise supplemental jurisdiction over it.

Under 28 U.S.C. § 1367(c), district courts may decline to exercise supplemental

jurisdiction over a related state law claim if (1) the claim raises a novel or complex issue of State

law, (2) the claim substantially predominates over the federal claim, or (3) the court has

dismissed all claims over which it has original jurisdiction.[5]  All three of these factors exist in

this case.

Maxey's public policy tort claim presents a novel theory of relief premised on an

extension of currently existing Colorado law.  Colorado courts currently recognize a claim for

wrongful discharge in violation of public policy premised on allegations that an employer

terminated an employee for failing to perform an illegal act.  *See Martin Marietta Corp. v.

Lorenz*, 823 P.2d 100. 109 (Colo. 1992).  The claim has never been recognized where the

adverse employment action was a transfer or a demotion, rather a discharge, and Maxey offers a

lengthy, substantive analysis in support of an extension of Colorado law to do so.  *See* Resp.

(Doc. 52) at 26-29 (discussing recent Nebraska and Kansas cases and arguing "no principled

reason" exists for why *Lorenz* should not be applicable to retaliatory employment decisions short

of termination).   The claim moreover, is a serious one raising a specter of public corruption and

abuses in local government in which Colorado courts and law enforcement authorities have a

---

[5]       A fourth basis, exceptional circumstances, is unnecessary to my analysis and I omit
it.  *See* § 1367(c)(4).

18

most direct and significant interest.

It also appears, upon a review of the pleadings, briefs and discovery record in this case, that Maxey's public policy claim predominates over his age discrimination claims. Given it is the only claim remaining, I decline, under 28 U.S.C. § 1367(c) to exercise supplemental jurisdiction over it. It is not my intent in so ruling to preserve the claim only to have it subject to dismissal on statute of limitations grounds. Accordingly, I REMAND this case to the District Court for the City and County of Denver, Colorado, from whence it was removed, for further proceedings on the Colorado claim.

Defendant's Motion for Summary Judgment (Doc. 36) is GRANTED in part and DENIED in part. Summary judgment shall enter in favor of Defendant and against Plaintiff on Plaintiff's ADEA claims. Summary judgment on Plaintiff's public policy tort claim, brought under Colorado law, is DENIED without prejudice to its being reasserted, if appropriate, in the state court below.

This case is REMANDED to the District Court for the City and County of Denver.

Dated:  September 1, 2009.                     **s/John L. Kane**
                                                SENIOR U.S. DISTRICT JUDGE